IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANOR STRAITS LLC and DREW KENNING, | |
| Plaintiffs and Counter-Defendants, | Case No. 23-cv-16633 |
| v. | Judge Mary M. Rowland |
| ALON FRUMER and MICHELLE BERLINER, | |
| Defendants and Counter-Complainants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs and Counter-Defendants Mannor Straits LLC and Drew Kenning ("Plaintiffs") brought a claim for declaratory judgment and defamation per se against Defendants and Counter-Complainants Alon Frumer and Michelle Berliner ("Defendants"). [11]. Defendants subsequently brought a counterclaim containing eight counts against Plaintiffs. [20]. Before the Court now are the parties' cross-motions for summary judgment. [59]; [60]. For the reasons stated below, both motions are denied.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

1

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017); *see also Chagoya v. City of Chicago*, 992 F.3d 607, 615 (7th Cir. 2021). The Court treats the motions separately. *Marcatante v. City of Chi.*, 433, 439 (7th Cir. 2011); *see also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416

(7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND

### I. Berliner's and Frumer's Employment with Manor Straits

Plaintiff Kenning is a founder and majority member of Manor Straits, a limited liability company organized in Delaware that provided real estate investment services to customers. [64] ¶¶ 1-3. By the fall of 2022, Manor Straits had between five and ten customers and planned to expand its business. [64] ¶ 4.

Around that time, Kenning met Defendant Berliner at a technology startup conference in New York. [64] ¶ 8. Kenning offered Berliner a position as Manor Straits's Chief Operating Officer (COO), which Berliner accepted. [64] ¶ 11. Berliner was hired as an independent contractor and the parties agreed that she would be paid $50,000 over six months and receive 5% ownership interest in Manor Straits that vested monthly. [64] ¶ 13. In email communications, Kenning proposed that her equity could be clawed back if she left Manor Straits less than one year after starting, but Berliner indicated she was willing to consider a claw back as long as she could keep up to 1% equity. [64] ¶ 14. It is undisputed that the parties never reached an agreement on the claw back arrangement. [64] ¶ 19.

In December 2022, Berliner began working as an independent contractor in the role of COO for Manor Straits. [64] ¶ 30. She quit in July 2023 after a falling out between her and Kenning, and in her resignation email she wrote "[w]ith the current vesting schedule, I leave the company with 3.75% equity." [63-1] ¶ 13. Kenning

3

testified during his deposition that she had a vested interest in Manor Straits of "somewhere around two and a half percent." [64] ¶ 30.

Around the same time, Berliner's husband, Frumer, began working in some capacity for Manor Straits. [64] ¶ 38. Frumer and Manor Straits never entered into a written or oral contract concerning compensation. [67] ¶ 21. Kenning told Frumer that Manor Straits had insufficient capital to pay him, but that Frumer would be compensated for the reasonable value of his services when Manor Straits received sufficient investment money to do so. [67] ¶¶ 23-24. It is undisputed that Frumer worked between 40-60 hours a week for Manor Straits but did not keep any time logs. [67] ¶¶ 17-19. Frumer's work involved performing various technology-related tasks and speaking extensively with Kenning. [67] ¶ 11-12. Frumer stopped performing work for Manor Straits when Berliner resigned. [64] ¶ 54. Berliner and Frumer are residents of New Jersey. [64] ¶ 45.

## II. New Jersey Lawsuits

On December 11, 2023, Frumer filed a lawsuit in New Jersey State Court against Manor Straits and Kenning. [64] ¶ 66. On December 29, 2023, Berliner likewise filed a lawsuit against Manor Straits and Kenning in New Jersey. [64] ¶ 67. The following month, Berliner forwarded copies of those complaints, and the complaint in this action, to various members of Manor Straits' advisory board. Kenning complained that he lost investors as a result but now concedes that the relevant investors told him they were withdrawing funds two months before Berliner sent the complaints to the board. [64] ¶¶ 73-75.

### III. Procedural History

Plaintiffs filed this action on December 8, 2023, bringing one count for a declaratory judgment to the effect that Manor Straits did not breach its contract with Berliner and that it had no contractual relationship with Frumer that could form the basis of a breach of contract. [1]. On February 2, 2024, Plaintiffs filed their first amended complaint ("FAC"). [11]. The FAC added a claim of defamation *per se* against Berliner premised on her sending copies of the New Jersey lawsuit complaints to Manor Straits board members and investors. [11] ¶¶ 47-52. On February 26, 2024, Defendants filed their answer to the FAC and a counterclaim. The counterclaim contains eight counts against Plaintiffs: Count I is a breach of contract claim on behalf of Berliner, and Counts II-IV are claims for promissory estoppel, unjust enrichment, and quantum meruit, respectively, pled in the alternative on behalf of Berliner. Count V is a claim for breach of contract on behalf of Frumer, and Counts VI-VIII are claims for promissory estoppel, unjust enrichment, and quantum meruit, respectively, pled in the alternative on behalf of Frumer.

After completing discovery, the parties filed cross-motions for summary judgment. Plaintiffs moved for summary judgment on all of Defendants' counterclaims [60]. Defendants' briefing makes clear that they are no longer pursuing Counts II-VII of their counterclaim. [59] at 4 n.1, 8 n.2. Rather, Defendants seek summary judgment on Plaintiff's claims for declaratory judgment and defamation *per se*, and Defendants' counterclaims for breach of contract on behalf of Berliner (Count I) and their claim premised on *quantum meruit* on behalf of Frumer (Count VIII).

Currently, Manor Straits has no money, property, clients, or employees. [67] ¶ 10.

## ANALYSIS

**I. Diversity Jurisdiction**

Before addressing the merits, the Court turns to the matter of jurisdiction. Plaintiffs invoked diversity jurisdiction in their complaint. [1] The Court ordered Plaintiffs to file a jurisdictional supplement establishing that the Court had diversity jurisdiction and reminded Plaintiffs that an LLC like Manor Straits maintains the citizenship of each of its members. [5] (citing *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007)). Plaintiffs filed a jurisdictional supplement that contained the names of the members of Manor Straits at the time the complaint was filed and their domicile. [8]. Importantly, neither Defendant was included on that list, and no members of Manor Straits shared either Defendants' state of citizenship, leading the Court to determine, for pleading purposes, that there was complete diversity among the parties. [9]

During summary judgment briefing, the issue took on new life. Defendants argued that Plaintiffs breached their contract with Berliner by denying her the equity in Manor Straits that she was owed. As evidence, Defendants argued that if Berliner *had* been given equity in Manor Straits, she would be a member of the LLC, denying this Court of jurisdiction and rendering Plaintiffs' jurisdictional supplement inaccurate. [59] at 6.

Defendants attached to their Rule 56.1 statement a document entitled "First Amendment and Addendum to the Limited Liability Company Operating Agreement

6

of Manor Straits LLC" (the "LLC Amendment"). [59-7]. This document, dated January 31, 2023, listed Defendant Berliner as a member and owner of a 5% equity stake in Manor Straits. [59-7] at 6. Defendants also pointed to other evidence in the record suggesting that Berliner owned an equity stake in Manor Straits. For example, during his deposition, Plaintiff Kenning was asked what percentage of Manor Straits Berliner "currently own[s]," and he answered that it was "around two and a half percent." [64] ¶ 30. Further, as noted above, when Berliner resigned from Manor Straits she wrote that she was leaving "with 3.75% equity." And in their opposition brief, Plaintiffs conceded that Berliner currently owns equity in Manor Straits, writing "this issue is resolved and Plaintiffs concede that summary judgment can be entered in favor of Berliner that she has a 3.33% equity stake in Manor Straits." [65] at 1.

After reviewing the parties' summary judgment briefing, the Court grew concerned that it did not have jurisdiction and ordered the parties to appear for an in-person hearing. [69]. In particular, the Court was concerned with the LCC Amendment that plainly describes Berliner as a member of the LLC as of January 31, 2023 which is prior to the date this matter was filed.[1] The Delaware Limited Liability Company Act (the "LLC Act") provides that a person is a member of an LLC "when the person's admission is reflected in the records of the LLC or as otherwise provided in the LLC Agreement." Del. Code Ann. tit. 6 § 18-301. Berliner's name in

---

[1] Diversity jurisdiction is determined as of the date of the case being filed. *Perry v. Pogemiller*, 16 F.3d 138, 139 (7th Cir. 1993).

the LLC Amendment indicates that Berliner was a member of Manor Straits at the time the LLC Amendment was drafted as a matter of law.

During the hearing, Plaintiffs' counsel argued that Berliner was not ever a member of the LLC and instead that she was either a "non-member distributional interest holder," or a "purely economic interest holder," or just an assignee of the LLC. Indeed, the LLC Act contemplates that a member's interest in an LLC is assignable, and that an assignee is not a member. Del. Code Ann. tit. 6 § 18-702(b)(1). Because these issues were not briefed on summary judgment, the Court ordered that Plaintiffs file a supplemental brief addressing, among other things, why the LLC Agreement was not dispositive as to Berliner's membership status and, assuming Berliner was an assignee as contemplated by the LLC Act, when she was assigned her interest and by whom. [71].

Plaintiffs filed a response to the first of those inquiries but not the second. In response to the first inquiry, Plaintiffs explained that the LLC Amendment was *not an accurate document* or a true amendment to the LLC Agreement. *See* [72] at 5-6 (emphasis added). Rather, it was compiled to show a potential investor the "capital stack" of Manor Straits, although Plaintiffs admit (and indeed argue) that the "capital stack" contained in the document was not accurate at the time it was prepared.[2] In response to the second inquiry, Plaintiffs appear to be unaware from whom or when any assignment occurred, saying it "could only have been done through [the parties']

---

[2] Although not germane to the issues before the Court, it is troubling that Plaintiffs admit to having prepared a sham amendment to the LLC Agreement with a knowingly false list of members and an inaccurate capital allocation to share with a prospective investor.

8

informal oral and email agreement." [72] at 6. Plaintiffs also argue that the original LLC Agreement contained various requirements for admission of a member into the LLC, and that Berliner did not satisfy those requirements. Defendants responded that Berliner was never given membership status and that the Court maintains jurisdiction. [73].

It is difficult to discern from this morass whether Berliner had any ownership interest in the LLC at the time this lawsuit was filed. Berliner is suing for an interest, so her position is she was never awarded an interest. Plaintiffs have not offered any evidence that Berliner was (or is) an assignee as contemplated by the LLC Act or the LLC Agreement. Instead, Plaintiffs have explained, at some risk to their credibility with this Court, that the LLC Amendment that listed Berliner as a member was a *fabrication*. Therefore, because both parties agree that Berliner was never a member of Manor Straits, the Court is satisfied that Berliner was not a member at the time this lawsuit was filed and that diversity jurisdiction exists here.

**III. Defendants' Count I – Berliner's Breach of Contract Claim**

Both parties move for summary judgment on Berliner's claim for breach of contract. To succeed on a breach of contract claim under Illinois law, a plaintiff must prove "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Thomas v. Today's Growth Consultant, Inc.*, No. 15-CV-06015, 2018 WL 3496095, at *2 (N.D. Ill. July 20, 2018) (citing *Burkhart v. Wolf Motors of Naperville, Inc.*, 61 N.E.3d 1155, 1159 (Ill. App. Ct. 2016)).

9

Berliner argues that she and Plaintiffs had an oral employment contract under which Berliner was entitled to a monthly payment and a monthly vesting of equity. Berliner acknowledges she was paid the wages she was owed but argues that she was never given any equity in Manor Straits. Defendants do not dispute that a contract existed and that under the terms of the contract, Berliner was entitled to at least some equity. The parties dispute, however, whether Berliner was given equity in the company.

For the reasons discussed in the Court's jurisdiction analysis, issues of fact preclude awarding judgment on this claim because the parties dispute what kind of interest Berliner was promised, what that interest would have entitled her to, whether she ever held that interest, and whether she holds that interest today. Accordingly, both parties' motions for summary judgment on Berliner's breach of contract claim are denied.[3]

### IV. Defendants' Count VIII – Frumer's *Quantum Meruit* Claim

Both parties also move for summary judgment on Frumer's *quantum meruit* claim. To recover under a theory of quantum meruit, a plaintiff must prove that (1) he

---

[3] If Berliner is ultimately successful on this claim, it is not clear what damages she may be entitled to. Berliner seeks $330,000 for the alleged breach, [69] at 10, but Berliner admits that there was no mechanism in her employment contract that would have required Manor Straits to buy out her equity interest, or any other mechanism by which she might have profited from her equity interest. [63-1] ¶¶ 12-15. The parties agree that Manor Straits has no value, and there is not evidence that Manor Straits ever deprived Berliner of a distribution of profits. Berliner thus seeks $330,000 in damages for a breach of contract despite that if the contract *had* been honored, she would own nothing more than a nominal percentage of a worthless company. Basic principles of contract law prohibit a damages award that places the plaintiff in a better position than they would be had the contract been performed. *In re Illinois Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013). However, under Illinois law a plaintiff who is entitled to nominal damages can succeed on a breach of contract claim, *see Schoeneweis v. Herrin,* 443 N.E.2d 36 (Ill. App. Ct. 1982), so the absence of any discernible basis to prove damages is not a reason to award Plaintiffs summary judgment.

performed a service to the benefit of the defendant; (2) he did not perform the service gratuitously; (3) defendants accepted this service; and (4) no contract existed to prescribe payment for this service. *Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 317-18 (Ill. App. Ct. 2002). The parties agree that Frumer worked for the benefit of Manor Straits in expectation of future compensation and that Manor Straits accepted his work, satisfying the first three elements of a claim under *quantum meruit*. [64] ¶¶ 32-54.

Relevant to the fourth element, the parties agreed to what appear to be contradictory facts. First, in Defendants' response to Plaintiffs' statement of facts, the parties agreed Plaintiffs and Frumer never entered in to an "oral or written contract" or had "any agreement in any form." [63-1] ¶ 24. If true, Defendants satisfy the fourth element of their *quantum meruit* claim and would be entitled to summary judgment. However, in Plaintiffs' response to Defendants' Rule 56.1 statement, the parties *also* agreed that "Kenning told Frumer . . .that once Manor Straits received additional investment funds, [Kenning] would compensate Frumer for the reasonable value of his services," [64] ¶ 40, and that Frumer began working for Manor Straits "in reliance" on that statement. [64] ¶ 41. If *this* is true, then the parties *had a contract*[4] under which Kenning would be obligated to pay Frumer for his services once Manor

---

[4] The fact that the agreement (assuming it existed) was premised on a condition—here, securing additional investment funding—does not preclude contract formation. "Consideration is not insufficient merely because it is a conditional promise, even though the controlling event may never occur. *Wilson v. Cont'l Body Corp.*, 418 N.E.2d 56, 59 (Ill. App. Ct. 1981).

11

Straits received additional investment funds.[5] That would mean Frumer could not succeed on his *quantum meruit* claim. *Installco*, 784 N.E.2d at 318 ("No quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests."). Because the parties (sloppily) agreed to two sets of facts that cannot both be true, and because Frumer would be entitled to summary judgment if the first set of facts is true but not the second, neither party is entitled to summary judgment on this claim.

### V. Plaintiffs' Count II – Defamation Per Se[6]

Defendant Berliner makes two arguments in support of her motion for summary judgment on Plaintiffs' claim for defamation *per se*. First, she argues that under New Jersey law, any statements made in a legal proceeding are subject to a "litigation privilege" protecting her from liability in a defamation action. Second, Berliner argues that Plaintiffs were not damaged by the allegedly defamatory statements.

As an initial matter, the parties appear to disagree over which states' laws apply to the parties' defamation claim. *See* [65] at 7. Illinois courts engage in a choice-of-law analysis only if there is an outcome-determinative conflict between the law of Illinois and the law of another state. *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017) If a party "fails to establish the existence of such a

---

[5] "A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Holloran v. Dickerson*, 679 N.E.2d 774, 782 (Ill. App. Ct. 1997). The fact that the parties did not agree on the precise amount Frumer would be paid, then, does not mean that no contract existed.

[6] Plaintiffs initially based their defamation claim on Berliner's use of a Facebook page. [11] ¶¶ 13-19. That assertion has seemingly been abandoned since Plaintiffs did not argue it in their response brief. [65].

12

conflict, the court applies the law of the forum state." *Id.* (citations omitted). Because neither party argued that any outcome-determinative conflict exists between Illinois and New Jersey law, the Court applies the law of Illinois, the forum state. *See id.*

The Court next turns to Berliner's arguments. Although Berliner's reliance on New Jersey's litigation privilege is misplaced, Illinois likewise recognizes a litigation privilege which provides that "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another . . ." in communications related to a legal proceeding. *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1008 (Ill. App. Ct. 2015) (citing Restatement (Second) of Torts § 586 (1977)). The privilege is intended to provide attorneys with "the utmost freedom in their efforts to secure justice for their clients" and to further an attorney's ability "to fully and fearlessly communicate with his client." *O'Callaghan*, 36 N.E.3d at 1008 (citations omitted).

Berliner allegedly defamed Plaintiffs by mailing the relevant complaints to Manor Straits board members and investors, *not* by making any statements in a legal proceeding. She admits that her intent in publishing the statements to board members and investors was to "express concern" about Kenning, not to further any legal proceeding. [59] ¶ 70. She cannot rely on the litigation privilege. She also cannot rely on the privilege because she is not an "attorney" and did not publish the defamatory statements "in furtherance of representation." *O'Callaghan*, 36 N.E.3d at 1008.

Even if New Jersey's litigation privilege were to apply, it would not command a different result. In New Jersey, the litigation privilege extends to allegedly

13

defamatory communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995) (citations omitted). Berliner has not pointed to any undisputed facts that could support an inference that she published the legal documents (complaints filed in New Jersey court and in this court) to members of the Manor Straits board in furtherance of "achiev[ing] the objects of the litigation." *Id.* Accordingly, Berliner is not entitled to summary judgment under either Illinois or New Jersey's litigation privilege.

Defendant's second argument—that she is entitled to summary judgment because Plaintiffs cannot prove damages—fails because damages are presumed in a defamation *per se* claim. To succeed on a defamation *per se* claim in Illinois, a plaintiff must establish "(1) that the defendant made a false statement concerning the plaintiff; (2) that there was an unprivileged publication of the defamatory statement to a third party by the defendant; and (3) that the plaintiff was damaged." *Seitz-Partridge v. Loyola Univ. of Chicago*, 987 N.E.2d 34, 41 (Ill. App. Ct. 2013) But Illinois law recognizes several "actionable *per se* categories," and a plaintiff does not need to prove damages if the defamatory statement falls into one of those categories. *Bryson v. News Am. Publications, Inc.*, 672 N.E.2d 1207, 1214 (Ill. 1996). The actionable *per se* categories are "(1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office

14

or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Id.* at 1214-15.

Berliner claimed that she sent the complaints to the board and investors to express "deep concern about the company's direction" under Kenning's leadership. [59] ¶ 70. "Words that … impute a lack of ability, in his or her trade, profession or business" are an actionable *per se* category under which damages in a defamation action are presumed. *Bryson,* 672 N.E.2d at 1214-15. Whether a statement constitutes defamation *per se* is a question of law, *Miller v. Danville Elks Lodge 332*, 569 N.E.2d 1160, 1164 (Ill. App. Ct. 1991). The Court determines the assertions contained in the New Jersey complaint are actionable *per se*. Although Rule 56 requires that a party moving for summary judgment establish that they are entitled to judgment as a matter of law, Berliner's briefing does not address Illinois precedent holding that a plaintiff need not prove damages if the underlying conduct was *per se* defamatory even after Plaintiffs raised the issue in their opposition brief. Accordingly, the Court cannot find that summary judgment is appropriate on Plaintiffs' claim for defamation *per se*.[7]

## VI. Defendants' Remaining Claims

In their motion for summary judgment, Defendants explained that following discovery they were "not. . . pursu[ing] for purposes of this motion" the "alternative theories" set out in Counts II – VII. [59] at 4 n.1. Plaintiffs moved for summary

---

[7] The Court notes that a *per se* defamation may fail if the allegedly defamatory statement is a protected opinion. *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 841 (Ill. 2006). But that will be left to the jury because neither party raised the issue.

15

judgment on these claims, but their brief did not mention any of the elements of the specific claims. In fact, outside of expounding the legal standard for summary judgment, Plaintiffs' opening brief did not include any case law at all. Accordingly, the Court cannot say that Plaintiffs demonstrated that they are entitled to judgment on any of Counts II – VII. However, because it appears that Defendants abandoned those claims, they are dismissed.

## CONCLUSION

For the stated reasons, both parties' motions for summary judgment [59]; [60] are denied. Counts II – VII are dismissed.

E N T E R:

Dated: August 25, 2025

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge